UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD RUMMELL and
SHERRIE RUMMELL,

    Plaintiffs,

v.

VANTIUM CAPITAL, INC., d/b/a
ACQURA LOAN SERVICES; and
CITIMORTGAGE, INC.; and
CASTLE PEAK 2010-1 LOAN TRUST; and
U.S. BANK, N.A.,

    Defendants.

_____/

Case No. 12-10952

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT CITIMORTGAGE'S MOTION TO DISMISS AND OTHER DEFENDANTS' CONCURRENCE IN DEFENDANT CITIMORTGAGE'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Chad and Sherrie Rummell ("Plaintiffs") filed an action on February 3, 2012 in Macomb County Circuit Court against Defendants Vantium Capital, Inc. d/b/a Acqura Loan Services ("Acqura"), CitiMortgage, Inc. ("CitiMortgage"), Castle Peak 2010-1 Loan Trust ("Castle Peak"), and U.S. Bank, N.A. ("U.S. Bank") seeking to force Defendants to modify Plaintiffs' mortgage loan and to enjoin Defendants from proceeding with a sheriff's sale on Plaintiffs' house. On February 21, 2012, the state-court judge issued a preliminary injunction, to remain in effect while the action was pending, enjoining Defendants Castle Peak and U.S. Bank from proceeding with any sheriff's sale on Plaintiffs' house or from selling, transferring, or disposing of Plaintiffs' house.

Defendants then removed this action to this Court on March 1, 2012. The suit arises out of a letter sent by Defendant CitiMortgage to Plaintiffs discussing a possible modification of Plaintiffs' loan should a series of conditions be met. Plaintiffs argue that all of these conditions have been met and that Defendants are therefore bound to modify Plaintiffs' loan.

This matter comes before the court on Defendant CitiMortgage's motion to dismiss and the other Defendants' concurrence in Defendant CitiMortgage's motion to dismiss or for summary judgment. For the reasons stated below, both motions are GRANTED.

**I.   Facts**

On April 30, 2004, Plaintiff Chad Rummell obtained a loan from Investaid Corporation secured by a mortgage, granted to non-party Mortgage Registration Systems, Inc. ("MERS"), to finance the purchase of real property located at 13479 Melanie, Sterling Heights, Michigan 48313. (Compl., ¶11; CitiMortgage Mot., Ex. B, Mortgage.) Effective July 1, 2008, Defendant CitiMortgage became the servicer of the mortgage loan. (Compl., ¶¶13-14.)

In 2009, as a result of financial hardship, Plaintiffs contacted Defendant CitiMortgage to discuss the possibility of a loan modification to make their monthly payments more affordable. On September 10, 2009, Defendant CitiMortgage sent Plaintiffs a proposal for a three-month Trial Period Plan ("TPP") under the Home Affordable Modification Program ("HAMP"). Under the terms of the TPP, Plaintiffs were required to make three monthly payments of $601.73 starting on October 1, 2009. (Compl., ¶¶15-17.) Plaintiffs allege that they "accepted the TPP agreement offer by

signing the contract the contract on September 24, 2009 and returning it to Defendant CitiMortgage." (Compl., ¶19).

The TPP provides that:

> If I [Plaintiff] am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement") as set forth in Section 3, that would amend and supplement (1) the Mortgage on the property, and (2) the Note secured by the Mortgage. . . .
>
> ***
>
> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for the offer described in this Plan (the "Offer"). <u>I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.</u> This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

(Compl., Ex. 1, TPP at 1 (emphasis added).)

The TPP, in Section 3, sets out the certain conditions that must be met before the loan documents will be modified. It states, "If I comply with the requirements of Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement. . . ." (Compl., Ex. 1, TPP at 3, ¶3.)

Section 2 of the TPP expressly provides that the Plaintiffs' loan will not be modified and the TPP will be terminated if certain conditions are not met:

> If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of the Modification Agreement; (ii) I have not made the Trial Period Payments required under Section 2 of this plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.

(Compl., Ex. 1, TPP at 2, ¶2.F.) Furthermore, by signing the TPP, Plaintiffs acknowledged that Defendant CitiMortgage was not agreeing to a loan modification and that certain conditions must be met before their loan would be modified:

> <u>I understand that the plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until</u> (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of the Modification Agreement, and (iii) the Modification Effective Date has passed. <u>I further understand and agree that the lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify</u> or if I fail to meet any one of the requirements under this plan. . . .

(Compl., Ex. 1, TPP at 2, ¶2.G (emphasis added).)

Plaintiffs claim that that they provided Defendant CitiMortgage with all of the necessary information to confirm that they were eligible for a HAMP loan modification and that they made the three monthly payments to Defendant CitiMortgage required under the TPP. (Compl., ¶¶21-22.) Defendant CitiMortgage never signed the TPP or returned a signed copy to Plaintiffs. (Compl., Ex. 1, TPP at 3.) Following the third payment, Defendant CitiMortgage advised Plaintiffs to continue making the same monthly payments because Defendant CitiMortgage was backed up in processing permanent loan modifications due to the volume of requests. (Compl., ¶23.) Plaintiffs continued making the reduced $601.73 monthly payments.

In May 2010, Defendant CitiMortgage notified Plaintiffs that their mortgage loan would now be serviced by Defendant Acqura. (Compl., ¶25; Def.'s Mot., Ex. C, 2010 Notice of Transferring Servs. Rights.) On April 27, 2011, the mortgage on Plaintiffs' home was assigned from MERS, as nominee for Investaid, to Defendant Castle Peak.

4

That assignment was recorded on May 19, 2011. (Defs.' Concurrence, Ex. 5, Assignment.)

Plaintiffs continued making the reduced monthly payments of $601.73 to Acqura from June 2010 until April 2011, when a representative from Defendant Acqura told Plaintiffs that they should stop making payments because they would not be given a permanent HAMP loan modification. (Compl., ¶¶26-27.) After acquiring the servicing rights to the loan, Defendant Acqura offered Plaintiffs a new TPP with scheduled payments on November 1, 2011, December 1, 2011, and January 1, 2012 in the amount of $1,113.21. (Defs.' Concurrence, Ex. 6, 2011 TPP.) However, because Plaintiffs failed to make the November 1, 2011 payment, Defendant Acqura notified them that they were no longer HAMP eligible. (Defs.' Concurrence, Ex. 7, Denial Letter.)

On or about March 29, 2011, Defendant Acqura sent a notice of default to Plaintiffs which indicated that they were in default on their loan for failure to make their required payments. (Defs.' Concurrence, Ex. 8, Notice of Default.) Per the notice of default, Plaintiffs were required to pay $31,813.45 by April 28, 2011 to cure the default.

In May 2011, Defendant Acqura initiated foreclosure proceedings against Plaintiffs. Defendant Acqura's designated agent, Potestivo and Associates, P.C., sent Plaintiff Chad Rummell a notice as required by Mich. Comp. Laws § 600.3205a advising him of his right to request a meeting within 14 days of the date of the notice to discuss a loan modification. (Compl., ¶28.) Mr. Rummell requested a meeting, which was held on June 3, 2011 via telephone. (Compl., ¶¶29-30.)

At this meeting, Plaintiffs allege that a representative from Defendant Acqura told Mr. Rummell that he was denied a permanent HAMP loan modification because Mr.

5

Rummell failed to send one of the three payments that were initially due under the CitiMortgage TPP. (Compl., ¶34.) Plaintiffs deny this and claim that they have fulfilled their obligations under the TPP offered by Defendant CitiMortgage. (Compl., ¶35.)

Plaintiffs also allege that while Defendant Acqura did extend a second TPP to them, they had no reason to enter into a second TPP after complying with the first TPP offered by Defendant CitiMortgage. Furthermore, Plaintiffs allege, Defendant Acqura's continued acceptance of the payments under the 2009 TPP offered by Defendant CitiMortgage shows that the 2009 TPP remained in effect. Therefore, according to Plaintiffs, Defendant Acqura assumed Defendant CitiMortgage's obligation to grant a permanent loan modification to Plaintiffs and failed to do so.

Nevertheless, Plaintiffs failed to cure the default. Therefore, in accordance with the Michigan foreclosure by advertisement statute, Mich. Comp. Laws. §§ 600.3201, *et. seq.*, Castle Peak initiated foreclosure proceedings. (Compl., Ex. 6, 1/19/12 Foreclosure Notice.)

On January 12, 2012, a Notice of Foreclosure was posted on the property. (Defs.' Concurrence, Ex. 9, Affidavit of Posting.) The Notice of Foreclosure was also published in the Macomb County Legal News on January 19, January 26, February 2, and February 9, 2012. (*Id.*, Ex. 10, Affidavit of Posting.) On each notice, the foreclosure entity is identified as Castle Peak. (*Id.*, Ex. 9; *Id.*, Ex. 10.)

The mortgage foreclosure sale was scheduled to be held on February 16, 2012. However, on February 3, 2012, Plaintiffs filed a Complaint, as well as an Ex Parte Motion for a Temporary Restraining Order in state court. Plaintiffs' Complaint and

Motion allege that Defendants should be enjoined from carrying out the foreclosure and that Plaintiffs are entitled to a permanent loan modification.

## II. Standards of Review

### A. Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all of the elements of a cause of action, supported by mere conclusiory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial expertise and common sense. But where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing and ruling upon a motion to dismiss, a court may look to documents that are "not formally incorporated by reference or attached to a complaint," if the "document is referred to in the complaint and central to the plaintiff's claims." *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir.1999) (citation omitted). A court's consideration of these documents does not convert the motion to dismiss into a motion for summary judgment. *Id.* (citation omitted).

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'—that is, pointing out to the district court-that there is an absence of evidence

to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light

most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education,* 286 F.3d 366, 370 (6th Cir. 2002).

### III. Analysis

Plaintiffs assert claims for: (1) breach of contract and specific performance (count I); promissory estoppel (count II); and (3) injunctive relief (count III). In their motions, Defendants argue that: (1) Plaintiffs' claims for breach of contract, specific performance, and promissory estoppel are barred by the statute of frauds; (2) even if not barred, these claims should be dismissed because no contract for a loan modification was ever formed; and (3) in light of the above, Plaintiffs are not entitled to injunctive relief. Plaintiffs respond that: (1) because Defendant CitiMortgage's cover letter accompanying the 2009 TPP had an electronic signature, their breach of contract, specific performance, and promissory estoppel claims are not barred by the statute of frauds; (2) the TPP constitutes a binding contract obligating Defendant CitiMortgage to permanently modify their mortgage loan; and (3) Defendant Acqura is also obligated to permanently modify their mortgage loan because it accepted Plaintiffs' reduced monthly payments set out under the 2009 TPP offered by Defendant CitiMortgage to Plaintiffs, and this caused the 2009 TPP to remain in effect. Defendants' arguments are persuasive, and Defendant CitiMortgage's motion to dismiss and the other Defendants' concurrence in the motion to dismiss or, in the alternative, for summary judgment are granted.

#### A. Plaintiffs' Claims are Barred by the Statute of Frauds

Plaintiffs' claims for breach of contract, specific performance, and promissory estoppel are barred by the statute of frauds because the 2009 TPP was not "signed with

an authorized signature by the financial institution." Mich. Comp. Laws § 566.132(2)(c).[1] "Under Michigan's statute of frauds, a financial institution's promise regarding financial accommodation, like a loan modification, is not enforceable unless it is (1) in writing, and (2) signed by an authorized agent of the financial institution." *Heikkinen v. Bank of America, N.A.*, No. 11-12532, 2012 WL 628608, at *7 (E.D. Mich. Feb. 27, 2012) (citing Mich. Comp. Laws § 566.132(2)(c)). *See also Brady v. Chase Home Finance, LLC*, No. 1:11-CV-838, 2012 WL 1900606, at *8 (W.D. Mich. May 24, 2012) ("Michigan courts interpret the requirement of an 'authorized signature' as that of an 'authorized representative' of the financial institution.") (quoting *Cadle Co. II, Inc. v. P.M. Group, Inc.*, No. 275099, 2007 WL 3119569, at *2 (Mich Ct. App. Oct. 25, 2007) (per curiam)). This statute applies to any "claim – no matter its label – brought against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech Park v. D & N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). Thus, Plaintiffs' claims for promissory estoppel, as well as for breach of contract and specific performance are barred. *See Ajami v. Indymac Mortg. Servs.*, No. 09-13488, 2009 WL 3874680, at *2 (E.D. Mich. Nov. 13, 2009).

---

[1] Mich. Comp. Laws § 566.132(2)(c) provides that:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> . . .
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Neither Defendant CitiMortgage nor any other Defendant signed the 2009 TPP. That portion of the signature line on the final page of the 2009 TPP is blank, and there is no other spot where any Defendant signed it. There is no evidence that the 2009 TPP was signed by an authorized agent of a Defendant financial institution. Plaintiffs' argument that the electronic "Sincerely, CitiMortgage Inc." on the cover letter accompanying the 2009 TPP, (Compl., Ex. 1, Cover Letter), satisfies the statue of frauds fails because it is not a writing signed by "an authorized agent of the financial institution" as required by Mich. Comp. Laws § 566.132(2)(c). *See Heikinnen*, 2011 WL 628608, at *7; *Brady*, 2012 WL 1900606, at *8 (holding that a cover letter accompanying a TPP signed "Sincerely, CHASE HOME FINANCE LLC" did not satisfy the statute of frauds because it was not an authorized signature).

Although Plaintiffs' claims are barred by the statute of frauds, they also are dismissed for the following reasons.

### B. The 2009 TPP Did Not Create a Binding Contract

Plaintiffs' breach of contract and specific performance claims fail because the 2009 TPP did not create a binding contract between any Defendant and Plaintiffs regarding a permanent loan modification. "Under Michigan Law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005). As this Court has previously observed, the TPP is only a proposal, and it does not create a binding contract when only one party has signed it. *Heikkinen v. Bank of America, N.A.*, No. 11-12532, 2012

WL 628608, at *6 (observing that "the loan modification proposal [the plaintiff] signed '[does] not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms" and quoting *Voydanoff v. Select Portfolio Serv., Inc.*, No. 298098, 2011 WL 6757841 (Mich. App. Dec. 22, 2011)).

The 2009 TPP Plaintiffs signed contains the same language as the TPP in *Heikkinen*. (Compl., Ex. 1, TPP.) "That document expressly provides that the Trial Period Plan is not a loan modification and Plaintiff's loan documents would not be modified 'unless and until' Plaintiff met all the conditions for modification…." *Heikkinen*, 2012 WL 628608, at *6. One of the conditions is that the "Loan Documents will not be modified unless and until . . . I [Plaintiff] receive a fully executed copy of a Modification agreement. . . ." (Compl., Ex. 1, TPP at 2, ¶2.G.) The TPP also states that it "will not take effect unless and until both I [the borrower] and the Lender sign it and Lender provides me with a copy of this plan with Lender's signature." (Compl., Ex. 1, TPP at 1.) Defendant CitiMortgage never signed the 2009 TPP and never returned a signed copy to Plaintiffs. Therefore, similarly to *Heikkinen*, the 2009 TPP did not "ripen into a binding contract" obligating any Defendant to provide Plaintiffs with a loan modification. *Heikkinen*, 2012 WL 628608, at *6.

To the extent that Plaintiffs rely on nonbinding decisions to the contrary, this Court declines to follow those decisions.

Plaintiffs further argue that Defendant CitiMortgage's execution of the 2009 TPP is a condition precedent, and Defendant CitiMortgage cannot use its own failure to sign the TPP as an excuse for nonperformance. *See Harbor Park Market v. Gronda*, 743

N.W.2d 585, 588-89 (Mich. Ct. App. 2007) ("[Promisors] cannot avoid liability on the contract for the failure of a condition precedent where they caused the failure of the condition."). This Court disagrees. The requirement that the TPP be signed by the Lender is not a condition precedent to the formation of the contract. Rather, it is a further manifestation of assent required by the Lender for there to be a valid offer. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (observing that "[u]nder contract law principles, when 'some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is yet no operative offer'" and quoting 1 Joseph M. Perillo, *Corbin on Contracts* § 1.11, at 31 (rev. ed. 1993)). *See also* Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.").

Unlike the TPP in *Wigod*, the 2009 TPP here was not countersigned by Defendant CitiMortgage, and an executed copy was not mailed back to Plaintiffs with a letter congratulating them on their approval for a trial modification. *See Wigod*, 673 F.3d at 562 (observing that "when Wells Fargo executed the TPP, its terms included a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain."). Here, because Defendant CitiMortgage did not countersign the 2009 TPP and did not return a signed copy to Plaintiffs, there was no offer, and there was no binding contract. Furthermore, because there was no binding contract to modify Plaintiffs' loan in 2009, Defendant Acqura's acceptance of reduced monthly payments

addressed in that TPP could not possibly create or continue a contract that never existed. Accordingly, Plaintiffs' breach of contract claims are dismissed.[2]

### C. Plaintiffs Did Not Reasonably Rely on a Promise by Any Defendant

Plaintiffs' promissory estoppel claim also fails. The elements of promissory estoppel are:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.

*Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999). The promise must be "actual, clear and definite." *State Bank of Standish v. Curry*, 500 N.W.2d 104, 107 (Mich. 1993). "Reliance is reasonable only if it is induced by an actual promise." *Id. See also McMath v. Ford Motor Co.*, 259 N.W.2d 140, 143 (Mich. Ct. App. 1986) (Plaintiff's allegations do not support a promise definite enough to justify his reliance.").

Defendants did not make a clear and definite promise to provide Plaintiffs with a permanent loan modification. The 2009 TPP provides that the lender must return a signed copy of the TPP to the borrower before there will be a loan modification. (Compl., Ex. 1, TPP at 2, ¶2.G.). It also states that it "will not take effect unless and until both I [the borrower] and the Lender sign it and Lender provides me with a copy of this plan with Lender's signature." (Compl., Ex. 1, TPP at 1). Because Defendant CitiMortgage never returned a signed copy of the TPP to Plaintiffs, it never made a clear

---

[2] In light of this ruling, it is unnecessary to address Defendants' additional arguments for dismissal of Plaintiffs' breach of contract claims.

and definite promise to permanently modify Plaintiffs' loan. Thus, any reliance by Plaintiffs on the representations in the 2009 TPP would be unreasonable. *See Brady*, 2012 WL 1900606, at *9 (holding that the borrower's reliance on a promise for a loan modification would have been unreasonable because the TPP requires that the lender sign and return the TPP to the borrower before any loan modification would occur).

Plaintiffs argue that the TPP does make a clear and definite promise to provide a loan modification because it states:

> If I [Plaintiff] am in compliance with this Trial Period Plan . . . and my representations in Section 1 continue to be true in all material respects, then the servicer will provide me with a Home Affordable Modification Agreement . . ., as set forth in Section 3 . . . ."

(Compl., Ex. 1, TPP at 1) (emphasis added).) Plaintiffs argue that this language conflicts with the language in the TPP that requires the lender to return a signed copy of the TPP to the borrower before the loan will be modified and thus creates an ambiguity that is "to be construed against the drafter." *Klapp v. United Ins. Group Agency*, 663 N.W.2d 447, 445 (Mich. 2003). Therefore, Plaintiffs assert, their reliance was justified because "any reasonable person reading [the above] language would rightfully assume that all they need to do to earn a HAMP modification is to comply with the TPP by making three timely payments." (Pls.' Resp. at 15). This Court disagrees.

The language of the TPP is not ambiguous. First, the language from Section 3 of the TPP requires compliance "with the requirements in Section 2. . ." (Compl., Ex. 1, TPP at 3, ¶3.) Section 2 expressly states that the "Loan documents will not be modified unless and until . . . I [Plaintiff] receive a fully executed copy of the modification agreement." (Compl., Ex. 1, TPP at 2, ¶2.G.) Plaintiffs never received a fully executed

copy of the TPP. Second, it is a well-established contract principle that language is not to be read out of a contract. *Klapp*, 663 N.W.2d at 468 ("[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory."). Plaintiffs' interpretation would not give effect to the requirement that an executed TPP be returned to the Plaintiffs.

Plaintiffs cite a Seventh Circuit case for the proposition that a reasonable person would read the language of the TPP as an offer to provide a permanent loan modification. (Pls.' Resp. to Defs.' Concurrence at 12-13, citing *Wigod*, 673 F.3d at 563.) Plaintiffs' reliance on *Wigod* is misplaced. In that case, unlike this one, the bank had signed and returned the TPP to the borrower. That is what made the borrowers reliance reasonable. *Wigod*, 673 F.3d at 563.[3]

### D. There is No Basis for Injunctive Relief

Based on the above, Plaintiffs have no right to injunctive relief. Moreover, pursuant to the terms of the state-court injunction, because Plaintiffs' action is dismissed, the injunction no longer remains in effect. (Compl., Ex. 14, 2/21/12 Order.)

## IV. Conclusion

For the above stated reasons, Defendant Citimortgage's motion to dismiss and the other Defendants' concurrence in Defendant Citimortgage's motion to dismiss or for summary judgment are GRANTED.

---

[3] In light of this ruling, it is unnecessary to address Defendants' additional arguments for dismissal of Plaintiffs' promissory estoppel claim.

SO ORDERED.

        s/Nancy G. Edmunds_____
        Nancy G. Edmunds
        United States District Judge

Dated: June 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2012, by electronic and/or ordinary mail

        s/Carol A. Hemeyer_____
        Case Manager